B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Farm Credit Services of America, PCA | Leroy Dardenne |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Aaron D. Heller, 870-336-6505<br>100 E. Matthews Ave., Jonesboro, AR 72401 | ATTORNEYS (If Known)<br>Kent Pray, Chris Turner, 501-771-7733<br>P.O. Box 94224, N. Little Rock, AR 72190 |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to deny discharge and dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(6) as well as 11 U.S.C. § 727, 727(a)(4)(D), 727(a)(2), 727(a)(3), and 727(a)(4)(A).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 193,622.20 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Leroy Dardenne | BANKRUPTCY CASE NO.<br>4:20-bk-14534 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Arkansas | DIVISION OFFICE<br>Central | NAME OF JUDGE<br>Phyllis M. Jones |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Aaron D. Heller<br>   Ark. Bar. No. 2010212 | | |
| DATE<br><br>   3/19/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>   Aaron D. Heller | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE: LEROY DARDENNE                                CASE NO. 4:20-bk-14534
                                                      CHAPTER 7

FARM CREDIT SERVICES OF AMERICA, PCA              PLAINTIFF

vs.                    Adversary Case No. _____

LEROY DARDENNE                                  DEFENDANT

COMPLAINT OBJECTING TO DISCHARGE
AND THE DISCHARGEABILITY OF DEBT

Comes now Farm Credit Services of America, PCA ("FCSA"), by and through its attorneys, Owens, Mixon & Heller, P.A., and for its Complaint Objection to Discharge and the Dischargeability of Debt pursuant to 11 U.S.C. § 523 and 11 U.S.C. 727, states as follows:

1.      Farm Credit Services of America, PCA, is a corporation organized and existing under the laws of the State of Nebraska and doing business in the State of Arkansas. FCSA is a creditor of Leroy Dardenne. by virtue of four (4) accounts:

      a.      Account XXX6968. Secured by:

        i.  John Deere 8260R Tractor, S# 1RW8260RCCD057139

      b.      Account XXX4129. Secured by:

        i.  John Deere 8330 Tractor, S# RW8330P001160; and

        ii.  Great Plains 2525P Drill, S# GP-1350SS

      c.      Account XXX7662. Secured by:

        i.  Case IH 2588 Combine, S# HAJ303369; and

        ii.  Case IH 2052 Grain Platform Head, S# CCC0014697

      d.      Account XXX7708. Secured by:

i. John Deere 8200 Tractor, S# RW8200P002372

2.      Defendant, Leroy Dardenne, ("Dardenne"), is the Debtor in the United States Bankruptcy Court for the Eastern District of Arkansas, Central Division, case number 4:20-bk-14534J.

3.      This Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523, venue is proper under 28 U.S.C. § 1409, and this is a core proceeding under 28 U.S.C. § 157.

4.      FCSA has brought this action in a timely manner; the deadline to commence this proceeding is March 22, 2021.

5.      On December 23, 2016, Dardenne executed a Retail Installment Contract and Security Agreement for the principal sum of $125,000.00 payable to Tractor Finders LLC for the stated purpose of purchasing:

One (1) John Deere 8260R Tractor, S# 1RW8260RCCD057139

(hereinafter referred to as "Loan 6968"). The Retail Installment Contract and Security Agreement were assigned to FCSA on the same day. A copy of the Loan 6968 Promissory Note and Loan Agreement is attached as Exhibit A.

6.      As part of that agreement, Dardenne granted FCSA a security interest in the John Deere 8260R purchased with the Loan 6968 loan proceeds for the purpose of securing repayment of Loan 6968 as well as any other existing or future loans between Dardenne and FCSA..

7.      FCSA perfected its security interest on January 4, 2017 by filing a UCC Financing Statement. A copy of the January 4, 2017 UCC Financing Statement is attached as Exhibit B.

8.      On February 8, 2017, Dardenne executed a Retail Installment Contract and Security Agreement for the principal sum of $90,800.00 payable to Tractor Finders, LLC for the stated purpose of purchasing:

> One (1) John Deere 8330 Tractor, S# RW8330P001160; and
> One (1) Great Plains 2525P Drill, S# GP-1350SS

(hereinafter referred to as "Loan 4129"). The Retail Installment Contract and Security Agreement was assigned to FCSA on the same day. A copy of the Loan 4129 Retail Installment Contract and Security Agreement is attached as Exhibit C.

9.      As part of that agreement, Dardenne granted FCSA a security interest in the John Deere 8330 Tractor and Great Plains 2525P Drill purchased with the Loan 4129 loan proceeds for the purpose of securing repayment of Loan 4129 as well as any other existing or future loans between Dardenne and FCSA.

10.     FCSA perfected its security interest on February 9, 2017 by filing a UCC Financing Statement. A copy of the UCC Financing Statement is attached as Exhibit D.

11.     On April 15, 2019, Dardenne executed a Retail Installment Contract and Security Agreement for the principal sum of $75,000.00 payable to Tractor Finders, LLC for the stated purpose of purchasing:

> One (1) Case IH 2588 Combine, S# HAJ303369; and
> One (1) Case IH 2052 Grain Platform Head, S# CCC0014697

(hereinafter referred to as "Loan 7662"). The Retail Installment Contract and Security Agreement was sold and assigned to FCSA on the same day. A copy of the Retail Installment Contract and Security Agreement is attached as Exhibit E.

12.     As part of that agreement, Dardenne granted FCSA a security interest in the Case IH 2588 Combine and the Case IH 2052 Grain Platform Head purchased with the Loan 7662 loan

proceeds for the purpose of securing repayment of Loan 7662 as well as any other existing or future loans between Dardenne and FCSA.

13.     FCSA perfected its security interest on April 15, 2019 by filing a UCC Financing Statement. A copy of the UCC Financing Statement is attached as Exhibit F.

14.     On April 15, 2019, Dardenne executed a Retail Installment Contract and Security Agreement for the principal sum of $40,000.00 payable to Tractor Finders LLC for the stated purpose of purchasing:

One (1) John Deere 8200 Tractor, S# RW8200P002372

(hereinafter referred to as "Loan 7708"). The Retail Installment Contract and Security Agreement was sold and assigned to FCSA on the same day. A copy of the Retail Installment Contract and Security Agreement is attached as Exhibit G.

15.     As part of that agreement, Dardenne granted FCSA a security interest in the John Deere 8200 Tractor purchased with the Loan 7708 loan proceeds for the purpose of securing repayment of Loan 7708 as well as any other existing or future loans between Dardenne and FCSA.

16.     FCSA perfected its security interest on April 15, 2019 by filing a UCC Financing Statement. A copy of the UCC Financing Statement is attached as Exhibit H.

17.     Prior to commencement of this bankruptcy, Dardenne defaulted in payment on Loans 6968 and 7708. This constituted a cross-default under Loans 4129 and 7662 and the balances of all four (4) loans were accelerated. Dardenne further defaulted under all four (4) Loans by selling equipment cross-collateralizing the Loans and by filing bankruptcy.

18.     Dardenne stated under oath in his first scheduled meeting of creditors that he sold the Case IH Combine #3369 and the Case IH Grain Platform Head #4697 at an auction conducted by Blackmon Auctions and applied the proceeds of these sales to another creditor: Stone Bank.

19.     Dardenne never gave FCSA notice of this auction, did not pay any proceeds of these sales to FCSA as the lienholder on the equipment, and failed to disclose within his Schedules the sales of this equipment collateral within the year prior to his bankruptcy filing.

20.     FCSA has confirmed with Blackmon Auctions that the Case IH Combine #3369 was sold by Blackmon Auctions but has no record of selling the Case IH Grain Platform Head #4697.

21.     Upon information and belief, Dardenne otherwise disposed of the Case IH Grain Platform Head #4697 without notice to FCSA.

22.     Dardenne further stated under oath at the first scheduled meeting of creditors that he never took possession of the John Deere 8200 Tractor #2372 or the John Deere 8260 Tractor #7139 and that he left those pieces of equipment with Wayne Caldwell at Tractor Finders LLC who agreed to take over the payments and keep the equipment.

23.     Neither Wayne Caldwell nor Tractor Finders LLC made payments to FCSA for these pieces of equipment.

24.     Upon information and belief, Dardenne disposed of those pieces of equipment in collusion with Wayne Caldwell and retained the loan proceeds in whole or in part.

25.     Dardenne financed the Case IH 2588 Combine #3369 and Case IH 2052 Grain Platform Head #4697 from Tractor Finders LLC on June 30, 2017 through financing from AgDirect/FCSA (hereinafter "Loan 6377"). A copy of the June 30, 2017 contract for Loan 6377 is attached as Exhibit I.

26.     On or about January 31, 2018, Dardenne wired $172,235.40 to AgriBank FCB on January 31, 2018 with a $115,170.84 portion of that wire as payoff for Loan #6377. A copy of the check to Stone Bank for the Loan #6377 as well as the wire instructions are attached as Exhibit J.

27.     Dardenne then purchased the Case IH 2588 Combine #3369 and Case IH 2052 Grain Platform Head #4697 from Tractor Finders LLC again on April 15, 2019. *See* Loan 7662, at Exhibit E.

28.     Loan 7662 was fraudulently presented to FCSA as a purchase money security interest by Dardenne from Tractor Finders LLC and not a refinance and Dardenne executed the Retail Installment Contract and Security Agreement which identified this as a purchase by Dardenne from Tractor Finders LLC.

29.     Upon information and belief, Dardenne intentionally and with the intent to defraud FCSA financed and/or refinanced the Case IH 2588 Combine #3369 and Case IH 2052 Grain Platform Head #4697 with FCSA and with Stone Bank without informing either creditor that he was also financing them with the other—creating priority issues with UCC filings.

30.     Dardenne is indebted to FCSA as follows:

    a.     For Loan 6968, in the principal amount of $74,928.25 plus interest in the amount of $312.20 and late fees in the amount of $510.47 as of December 14, 2020, totaling $75,750.92;

    b.     For Loan 4129, in the principal amount of 10,082.89 plus interest in the amount of $409.34 as of December 14, 2020, totaling $10,492.23;

    c.     For Loan 7662, in the principal amount of $61,519.95 plus interest in the amount of $2,038.53 as of December 14, 2020, totaling $63,558.48; and

    d.     For Loan 7708, in the principal amount of $40,000.00 plus interest in the amount of $3,820.57 as of December 14, 2020, totaling $43,820.57.

31. Loans 6968, 4129, 7662, and 7708 were all cross-collateralized and the collateral securing each individual loan also secured all other loans between FCSA and Dardenne; as a result, the conversion of collateral on one Loan is conversion of collateral securing all loans.

32. Dardenne's acts of selling or giving away the collateral securing FCSA's loans to him without notice to or authorization from FCSA, damaged FCSA in an unliquidated sum estimated to be upwards of $316,250.00, representing the purchase value of the converted, destroyed, or displaced collateral.

33. Dardenne caused these damages to FCSA by actual fraud and with fraudulent intent as prohibited by 11 U.S.C. § 523 (a)(2)(A) and caused willful and malicious injury to the property interests of FCSA in the converted collateral as prohibited by 11 U.S.C. § 523(a)(6).

34. The Debtor's discharge should also be denied pursuant to 11 U.S.C. § 727. The Debtor lists real estate, non-exempt and unencumbered, but has not and apparently, will not, cooperate with the Trustee in turning over relevant information in order for her to sell in violation of 11 U.S.C. § 727(a)(4)(D). Further, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) based on the Debtor's failure to disclose in his Schedules the sale of the FCSA collateral which took place within a year of filing with the intent to defraud FCSA.

35. Debtor's discharge should be denied for violation of 11 U.S.C. § 727(a)(4)(A), in that he knowingly and fraudulently made a false oath by omitting the existence FCSA's equipment collateral or any transfer of the equipment from his schedules.

36. Dardenne's total obligations to FCSA in the sum of $193,622.20, plus FCSA's reasonable costs and attorney's fees, should be excepted from discharge in this proceeding and any subsequent bankruptcy proceeding initiated by or against Dardenne.

37.     FCSA should be awarded a non-dischargeable judgment against Dardenne for the market value of the converted, destroyed, or displaced collateral up to the total loan balances due to FCSA from Dardenne, plus judgment interest, costs and attorney's fees. This amount is estimated to be $193,622.20 plus FCSA's reasonable costs and attorney's fees.

36.     Dardenne's default in payment and sale and conversion of collateral and its proceeds are cause for this court to grant relief from the automatic stay necessary for FCSA to take possession of the remaining property that secures Dardenne's obligation to FCSA.

37.     FCSA's interest in the remaining collateral is not adequately protected. This constitutes cause for the court to grant relief from the stay in accordance with 11 U.S.C. § 362(d)(1).

38.     Dardenne does not have any equity in the collateral and it is not necessary for an effective reorganization. This constitutes cause for the court to grant relief from the stay in accordance with 11 U.S.C. § 362(d)(2).

39.     The property is burdensome to the estate or of inconsequential value to the estate and should be abandoned by the trustee in accordance with 11 U.S.C. § 554(a).

40.     FCSA should be awarded an order terminating the automatic stay as to the following and requests that the stay provisions of Bankruptcy Rule 4001 (a)(3), shall not apply to the order so that FCSA may immediately pursue its lawful remedies against Debtor's interest in the remaining property to-wit:

>       One (1) Case IH 2052 Grain Platform Head, S# CCC0014697; and
>       One (1) Great Plains 2525P Drill, S# GP-1350SS.

WHEREFORE, Farm Credit Services of America, PCA prays that Leroy Dardenne's indebtedness to it be excepted from discharge, for a non-dischargeable judgment against Leroy

Dardenne in a sum to be determined but estimated to be $193,622.20, plus interest, costs, and attorney's fees, and for all other proper relief.

<div style="margin-left: 40%;">

Respectfully Submitted,

Aaron D. Heller, 2010212
Owens, Mixon & Heller, P.A.
P.O. Box 4015
Jonesboro, AR 72403
aheller@omglawfirm.com
1-870-336-6505 (phone)
1-870-336-6506 (facsimile)
*Attorneys for Farm Credit Services of America, PCA*

By: /s/ Aaron D. Heller

</div>

<div align="center">

CERTIFICATE OF SERVICE

</div>

The undersigned attorney hereby certifies that on the 19th day of March, 2021, he has caused to be filed the foregoing pleading via electronic CM/ECF filing and whereby notice is to be provided to the following attorneys by the Court using the CM/ECF system:

Kent Pray

Pray Law Firm
P.O. Box 94244
N. Little Rock, AR 72190
kent.pray@praylawfirm.com

Renee S. Williams
Chapter 7 Panel Trustee
125 Robertsridge Street
Hot Springs, AR 71901-7286

<div style="margin-left: 50%;">

/s/ Aaron D. Heller
Aaron D. Heller

</div>

███████████████ 968

# *AgDirect*.

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

| BUYER ("Buyer") |
|---|

Le Roy Dardenne
100 S 2nd St
Wabbaseka, AR 72175

Principal Residence: Arkansas
Organization ID: Not Applicable
Organization Type: Individual

| SELLER ("Seller") |
|---|

Tractor Finders LLC
106892 Hwy 65 N
Dumas, AR 71639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

| EQUIPMENT DESCRIPTION ("Equipment") | | | |
|---|---|---|---|
| Make | Model | Description | Serial No. |
| John Deere | 8260R | Tractor | 1RW8260RCCD057139 |

| EQUIPMENT LOCATION ("Equipment Location") |
|---|

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

| STATEMENT OF COST | | | |
|---|---|---|---|
| 1. | Cash Sale Price | 1. | 156,250.00 |
| 2. | Sales Tax, if any | 2. | 0.00 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | 3. | **156,250.00** |
| 4. | Cash Down Payment | 4. | 31,250.00 |
| 5. | Net Trade In Allowance | 5. | 0.00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | 6. | **31,250.00** |
| 7. | Unpaid Cash Balance (3 − 6) | 7. | 125,000.00 |
| 8. | **AMOUNT FINANCED (BASIC TIME PRICE) (7)** | 8. | **125,000.00** |
| 9. | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | 9. | **115.75** |
| 10. | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (8 + 9)** | 10. | **125,115.75** |
| 11. | **TIME-SALES PRICE (6 + 10)** | 11. | **156,365.75** |

| Annual Interest Rate |
|---|

**Annual Interest Rate ("AIR"): 0.03**

The AIR for this Contract is the effective interest rate, which is the stated interest rate adjusted to show the effect of any partial interest waivers granted for this Contract, evidenced by the preliminary interest rate noted below. If installment payments are other than annual, the effective interest rate may be slightly lower.

Interest will accrue at the preliminary interest rate of **0.000** percent per annum until **November 23, 2021**. Beginning on **November 23, 2021**, the interest rate will increase to the fixed interest rate of **4.290** percent per annum until maturity.

| TERMS OF PAYMENT |
|---|

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and | Type (Each Payment) | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annual | $25,023.15 | Principal & Interest | 01/01/2018 | 01/01/2022 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE | 1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO |
|---|---|

App #: 2305414;  Form Version: 11-2013
Form 8422, Retail Installment Contract

100AD

Legal Doc. Date: December 23, 2016
Page 1

**"EXHIBIT A"**

| TO BUYER: | NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT. |
|---|---|

**NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.**

### SECURITY INTEREST

Buyer hereby grants to Seller, together with its successors and assigns (including but not limited to Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

## RETAIL INSTALLMENT CONTRACT

Buyer(s):

_Le Roy Dardenne_          _12-23-16_
Le Roy Dardenne                    Date

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_     TITLE: _Owner_     DATE: _12-23-16_

### SELLER ASSIGNMENT

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_     TITLE: _Owner_     DATE: _12-23-16_

## ADDITIONAL TERMS AND CONDITIONS

Buyer hereby agrees as follows:

**1. BUYER'S REPRESENTATIONS AND WARRANTIES**. Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; and (l) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

**2. BUYER'S WAIVERS**. To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

**3. ASSIGNMENTS**. Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims.

Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

Buyer further acknowledges each of the following: (a) Finance Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

**4. APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

**5. DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

**6. INSURANCE**. Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any

## ADDITIONAL TERMS AND CONDITIONS

insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

7. **GENERAL INDEMNITY**. Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property. Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

8. **LATE PAYMENT FEE**. If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence. If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

9. **EVENTS OF DEFAULT**. An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder. No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

10. **REMEDIES**. Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it.

If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate. The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to any other remedy available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller. If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended

sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

11. **PERFORMANCE BY FINANCE COMPANY**. If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation. The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company. Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company. This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

12. **USURY**. Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate. If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

13. **BENEFIT**. Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

14. **SEVERABILITY**. Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

15. **ORIGINAL / TRANSMITTAL**. This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

16. **USA PATRIOT ACT**. Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

17. **MISCELLANEOUS**. This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. Buyer waives any right to a trial by jury and agrees that trial shall be by and only to the court. Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 40000140694088
File Date : 04-Jan-2017

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   14060 - FARM CREDIT

CT Lien Solutions
330 N Brand Blvd #700
Glendale, CA 91203

57110186

ARAR

File with: Secretary of State, AR

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME**: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Dardenne | Le | Roy | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 100 S 2nd St | Wabbaseka | AR | 72175 | USA |

2. **DEBTOR'S NAME**: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 2409 | Omaha | NE | 68103 | USA |

4. **COLLATERAL**: This financing statement covers the following collateral:
John Deere 8260R Tractor 1RW8260RCCD057139

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. **ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
57110186          267          3066968404435

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)          **"EXHIBIT B"**          Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **18a. ORGANIZATION'S NAME** | |
| OR **18b. INDIVIDUAL'S SURNAME** Dardenne | |
| FIRST PERSONAL NAME Le | |
| ADDITIONAL NAME(S)/INITIAL(S) Roy | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**22.** ☒ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME Tractor Finders LLC | | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS 106892 Hwy 65 N | CITY Dumas | STATE AR / POSTAL CODE 71639 | COUNTRY USA |

**23.** ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**24. MISCELLANEOUS:** 57110186-AR-0   14060 - FARM CREDIT SERVICES   FARM CREDIT SERVICES OF   File with: Secretary of State, AR   267   3066968404435

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

4129

# AgDirect.

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

| BUYER ("Buyer") |
|---|

Le Roy Dardenne
100 S 2nd St
Wabbaseka, AR 72175

Principal Residence: Arkansas
Organization ID: Not Applicable
Organization Type: Individual

| SELLER ("Seller") |
|---|

Tractor Finders LLC
106892 Hwy 65 N
Dumas, AR 71639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

| EQUIPMENT DESCRIPTION ("Equipment") |
|---|

| Make | Model | Description | Serial No. |
|---|---|---|---|
| John Deere | 8330 | Tractor | RW8330P001160 |
| Great Plains | 2525P | Drill | GP-1350SS |

| EQUIPMENT LOCATION ("Equipment Location") |
|---|

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

| STATEMENT OF COST | | | |
|---|---|---|---|
| 1. | Cash Sale Price | 1. | 113,500.00 |
| 2. | Sales Tax, if any | 2. | 0.00 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | 3. | 113,500.00 |
| 4. | Cash Down Payment | 4. | 1,700.00 |
| 5. | Net Trade In Allowance | 5. | 21,000.00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | 6. | 22,700.00 |
| 7. | Unpaid Cash Balance (3 – 6) | 7. | 90,800.00 |
| 8. | **AMOUNT FINANCED (BASIC TIME PRICE) (7)** | 8. | 90,800.00 |
| 9. | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | 9. | 13,214.25 |
| 10. | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (8 + 9)** | 10. | 104,014.25 |
| 11. | **TIME-SALES PRICE (6 + 10)** | 11. | 126,714.25 |

| Annual Interest Rate |
|---|

**Annual Interest Rate ("AIR"): 4.550**

Interest rate is fixed at the AIR until maturity.

| TERMS OF PAYMENT |
|---|

**EQUAL INSTALLMENTS**

Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and | Type (Each Payment) | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annual | $20,802.85 | Principal & Interest | 03/01/2018 | 03/01/2022 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE TO BUYER: | 1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) |
|---|---|

**"EXHIBIT C"**

**KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT. NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.**

### SECURITY INTEREST

Buyer hereby grants to Seller, together with its successors and assigns (including but not limited to Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

### RETAIL INSTALLMENT CONTRACT

Buyer(s):

_Le Roy Dardenne_ _____   Date _2-8-17_

Le Roy Dardenne

**Seller: Tractor Finders LLC**

BY: _Wayne Caldwell_   TITLE: _Owner_   DATE: _2-8-17_

### SELLER ASSIGNMENT

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

**Seller: Tractor Finders LLC**

BY: _Wayne Caldwell_   TITLE: _Owner_   DATE: _2-8-17_

## ADDITIONAL TERMS AND CONDITIONS

Buyer hereby agrees as follows:

1. **BUYER'S REPRESENTATIONS AND WARRANTIES**. Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; and (l) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

2. **BUYER'S WAIVERS**. To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

3. **ASSIGNMENTS**. Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company. It being understood that Seller shall remain liable to Buyer for any such claims.

Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

**Buyer further acknowledges each of the following: (a) Finance**

**Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.**

4. **APPOINTMENT OF FINANCE COMPANY AS SERVICER**. Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

5. **DISBURSEMENT AUTHORIZATION**. Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

6. **INSURANCE**. Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any

## ADDITIONAL TERMS AND CONDITIONS

insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

7. **GENERAL INDEMNITY.** Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property. Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

8. **LATE PAYMENT FEE.** If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence. If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

9. **EVENTS OF DEFAULT.** An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder. No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

10. **REMEDIES.** Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it.

If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate. The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to any other remedy available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller. If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended

sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

11. **PERFORMANCE BY FINANCE COMPANY.** If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation. The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company. Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company. This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

12. **USURY.** Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate. If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

13. **BENEFIT.** Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

14. **SEVERABILITY.** Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

15. **ORIGINAL / TRANSMITTAL.** This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

16. **USA PATRIOT ACT.** Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

17. **MISCELLANEOUS.** This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. Buyer waives any right to a trial by jury and agrees that trial shall be by and only to the court. Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

Return to AgDirect

FORM 8430 (04-2017)

▮▮▮▮▮▮4129   Date: May 18, 2017

# *AgDirect*®

## AMENDMENT TO RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT

This AMENDMENT ("Amendment") to Retail Installment Contract and Security Agreement number ▮▮▮▮▮▮4129 dated February 8, 2017, and any amendments or addenda thereof ("Contract") is made and entered into on May 18, 2017, by and among the buyer(s) and/or purchaser(s) ("Buyer") designated in the Contract and Farm Credit Services of America, PCA, as servicer, ("Finance Company"). The parties hereby amend the terms of the Contract only as specified below. The terms of the Contract shall in all other respects remain in full force and effect and are made a part hereof by this reference.

### REAMORTIZATION OF PAYMENT SCHEDULE:

**BALANCE OF INDEBTEDNESS:** The balance of the Total of Payments/Time Price Balance due and owing pursuant to the Contract as of the date of this Amendment is $26,912.90.

**TERMS OF PAYMENT:** Buyer agrees to pay and Seller agrees to accept the Total of Payments/Time Price Balance in installments as follows:

| No. | Each Due | Amount and Type (Each Payment) | | Begin Date | End Date |
|-----|----------|-------------------------------|---|-----------|----------|
| 1 | Annually | $3,542.61 | Principal, plus interest on the unpaid principal balance | 03/01/2018 | 03/01/2018 |
| 4 | Annually | $5,382.58 | Principal & Interest | 03/01/2019 | 03/01/2022 |

The actual amount may vary according to the interest rate then in effect.

**FEE:** The fee for this servicing action is $5.00.

**TRANSMITTAL:** This Amendment may be authenticated by a party and transmitted by facsimile or electronic media. Any authenticated copy of this Amendment which was transmitted by facsimile or electronic media shall be deemed an executed original of this Amendment.

**CERTIFICATION:** Buyer further agrees as follows:
Finance Company may adjust the payment schedule set out in said Contract and as modified by the provisions of this Amendment as needed to include any change in interest rates; any change in amounts advanced, extended, deferred, or reamortized; or any change in any other provision of said Contract and any change in the amounts outstanding may, at Finance Company's option, be added to the principal balance owing on said Contract and will accrue interest at the interest rate and terms set out in the Contract; Except as specifically modified by this Amendment, all terms, conditions, covenants, warranties, and provisions of said Contract and any amendments or addenda thereto, and any other document(s) or instrument(s) evidencing either the indebtedness or property given as collateral for the same remain in full force and effect and are hereby ratified and confirmed;
To provide Finance Company on request with financial information in a format acceptable to Finance Company;
That the rights of all parties executing any documents specified above but not executing this Amendment are reserved; and
That failure to pay any amounts or to otherwise comply with the terms and conditions specified above may be treated as a default under the original Contract.

Buyer certifies that ALL the information provided by Buyer to Finance Company is true and correct.

**Buyer:**

*Le Roy Dardenne*
Le Roy Dardenne

**Finance Company:**

Farm Credit Services of America, PCA

By: *Kathy A Gotham*
Assistant Corporate Secretary

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 40000142658969
File Date   : 09-Feb-2017

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>Phone: 800-331-3282 Fax: 818-662-4141 | |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br>CT Lien Solutions<br>330 N Brand Blvd #700<br>Glendale, CA  91203 | 14060 - FARM CREDIT<br><br>57578399<br><br>ARAR |

File with: Secretary of State, AR

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME<br>Dardenne | FIRST PERSONAL NAME<br>Le | ADDITIONAL NAME(S)/INITIAL(S)<br>Roy | SUFFIX |
| 1c. MAILING ADDRESS<br>100 S 2nd St | CITY<br>Wabbaseka | STATE AR | POSTAL CODE 72175 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME<br>FARM CREDIT SERVICES OF AMERICA, PCA | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>PO BOX 2409 | CITY<br>Omaha | STATE NE | POSTAL CODE 68103 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
Great Plains 2525P Drill GP-1350SS
John Deere 8330 Tractor RW8330P001160

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check **only** if applicable and check **only** one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
57578399                    267                                    3074129404435

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)   **"EXHIBIT D"**

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

OR

18b. INDIVIDUAL'S SURNAME
Dardenne

FIRST PERSONAL NAME
Le

ADDITIONAL NAME(S)/INITIAL(S)
Roy

SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

22. ☒ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME Tractor Finders LLC | | | |
|---|---|---|---|
| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS 106892 Hwy 65 N | CITY Dumas | STATE AR / POSTAL CODE 71639 | COUNTRY USA |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 57578399-AR-0   14060 - FARM CREDIT SERVICES   FARM CREDIT SERVICES OF   File with: Secretary of State, AR   267   3074129404435

**AgDirect®**

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

### BUYER ("Buyer")

Le Roy Dardenne
100 S 2nd St
Wabbaseka, AR 72175

Principal Residence: Arkansas
Organization ID: Not Applicable
Organization Type: Individual

### SELLER ("Seller")

Tractor Finders LLC
106892 Hwy 65 N
Dumas, AR 71639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

### EQUIPMENT DESCRIPTION ("Equipment")

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Case IH | 2588 | Combine | HAJ303369 |
| Case IH | 2052 | Grain Platform Head | CCC0014697 |

### EQUIPMENT LOCATION ("Equipment Location")

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

### STATEMENT OF COST

| | | | | |
|---|---|---|---|---|
| 1. | Cash Sale Price | 1. | 95,000.00 |
| 2. | Sales Tax, if any | 2. | 0.00 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | 3. | 95,000.00 |
| 4. | Cash Down Payment | 4. | 20,000.00 |
| 5. | Net Trade In Allowance | 5. | 0.00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | 6. | **20,000.00** |
| 7. | Unpaid Cash Balance (3 − 6) | 7. | 75,000.00 |
| 8. | **AMOUNT FINANCED (BASIC TIME PRICE) (7)** | 8. | **75,000.00** |
| 9. | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | 9. | **11,460.40** |
| 10. | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (8 + 9)** | 10. | **86,460.40** |
| 11. | **TIME-SALES PRICE (6 + 10)** | 11. | **106,460.40** |

### Annual Interest Rate

Annual Interest Rate ("AIR"): 4.790

Interest rate is fixed at the AIR until maturity.

### TERMS OF PAYMENT

**EQUAL INSTALLMENTS**

Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and | Type (Each Payment) | Begin Date | End Date |
|-----|----------|------------|---------------------|------------|----------|
| 5 | Annual | $17,292.08 | Principal & interest | 05/01/2020 | 05/01/2024 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE TO BUYER: | **1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL** |
|---|---|

App #: 2402028;   Form Version: 11-2018
Form 8422, Retail Installment Contract and Security Agreement                    100AD      **"EXHIBIT E"**

Legal Doc. Date: April 15, 2019
Page 1 of 5

**NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.**

| SECURITY INTEREST |
|---|

Buyer hereby grants to Seller, together with its successors and assigns and (Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

## RETAIL INSTALLMENT CONTRACT

Acknowledgment by Buyer(s): Buyer(s) hereby acknowledge personal delivery of a copy of this Contract signed by the Seller.

Buyer(s):

_Le Roy Dardenne_ — Date _4-15-2019_

Le Roy Dardenne

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_   TITLE: _Owner_   DATE: _4-15-19_

| SELLER ASSIGNMENT |
|---|

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_   TITLE: _Owner_   DATE: _4-15-19_

**ADDITIONAL TERMS AND CONDITIONS**

Buyer hereby agrees as follows:

**1. BUYER'S REPRESENTATIONS AND WARRANTIES & COVENANTS.** Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; (l) Buyer agrees Seller or Finance Company may provide to any guarantor the current outstanding balance and payment status on this Contract; and (m) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

**2. BUYER'S WAIVERS.** To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

**3. ASSIGNMENTS.** Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims.

Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

Buyer further acknowledges each of the following: (a) Finance

Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

**4. APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

**5. DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

**6. INSURANCE.** Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any

**ADDITIONAL TERMS AND CONDITIONS**

insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

7.  **GENERAL INDEMNITY**. Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property.  Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

8.  **LATE PAYMENT FEE**.  If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence.  If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

9.  **EVENTS OF DEFAULT**.  An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder.  No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

10.  **REMEDIES**.  Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it.

If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate.  The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to any other remedy available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller.  If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended

sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

11.  **PERFORMANCE BY FINANCE COMPANY**.  If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation.  The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company.  Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company.  This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

12.  **USURY**.  Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate.  If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

13.  **BENEFIT**.  Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

14.  **SEVERABILITY**.  Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

15.  **ORIGINAL / TRANSMITTAL**.  This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

16.  **CONSENT TO ELECTRONIC COMMUNICATIONS**. Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the

Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

17. **USA PATRIOT ACT.** Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

18. **MISCELLANEOUS.** This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. **BUYER WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT TRIAL SHALL BE BY AND ONLY TO THE COURT.** Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. This Contract shall be governed by, and construed in accordance with, the laws of the State of Nebraska, except to the extent that the law of any other jurisdiction applies as to the perfection or enforcement of security interests in or liens on any Equipment. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
14060 - FARM CREDIT

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

69402899

ARAR

File with: Secretary of State, AR

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 40000186148395
File Date  : 04/15/2019

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **1b. INDIVIDUAL'S SURNAME** Dardenne | **FIRST PERSONAL NAME** Le | **ADDITIONAL NAME(S)/INITIAL(S)** Roy | **SUFFIX** |
| **1c. MAILING ADDRESS** 100 S 2nd St | **CITY** Wabbaseka | **STATE** AR  **POSTAL CODE** 72175 | **COUNTRY** USA |

2. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE**  **POSTAL CODE** | **COUNTRY** |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FARM CREDIT SERVICES OF AMERICA, PCA | | | |
|---|---|---|---|
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **3c. MAILING ADDRESS** PO BOX 2409 | **CITY** Omaha | **STATE** NE  **POSTAL CODE** 68103 | **COUNTRY** USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Case IH 2588 Combine HAJ303369
Case IH 2052 Grain Platform Head CCC0014697

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
69402899                    267                                                    3187662404435

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)


**"EXHIBIT F"**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 18a. ORGANIZATION'S NAME | |
| OR 18b. INDIVIDUAL'S SURNAME | |
| | Dardenne |
| | FIRST PERSONAL NAME |
| | Le |
| | ADDITIONAL NAME(S)/INITIAL(S) |
| | Roy |

SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

19. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☒ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Tractor Finders LLC | | | | |
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 106892 Hwy 65 N | Dumas | AR | 71639 | USA |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 69402899-AR-0   14060 - FARM CREDIT SERVICES    FARM CREDIT SERVICES OF         File with: Secretary of State, AR      267   3187662404435

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# *AgDirect*®

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

| BUYER ("Buyer") |
|---|

| | |
|---|---|
| Le Roy Dardenne<br>100 S 2nd St<br>Wabbaseka, AR 72175 | Principal Residence: Arkansas<br>Organization ID: Not Applicable<br>Organization Type: Individual |

| SELLER ("Seller") |
|---|

Tractor Finders LLC
106892 Hwy 65 N
Dumas, AR 71639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

| EQUIPMENT DESCRIPTION ("Equipment") | | | |
|---|---|---|---|
| Make | Model | Description | Serial No. |
| John Deere | 8200 | Tractor | RW8200P002372 |

| EQUIPMENT LOCATION ("Equipment Location") |
|---|

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

| STATEMENT OF COST | | | |
|---|---|---|---|
| 1. | Cash Sale Price | 1. | 65,000.00 |
| 2. | Sales Tax, if any | 2. | 0.00 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | 3. | **65,000.00** |
| 4. | Cash Down Payment | 4. | 0.00 |
| 5. | Net Trade In Allowance | 5. | 25,000.00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | 6. | **25,000.00** |
| 7. | Unpaid Cash Balance (3 – 6) | 7. | 40,000.00 |
| 8. | **AMOUNT FINANCED (BASIC TIME PRICE) (7)** | 8. | **40,000.00** |
| 9. | FINANCE CHARGE (TIME-PRICE DIFFERENTIAL) | 9. | 7,036.85 |
| 10. | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (8 + 9)** | 10. | **47,036.85** |
| 11. | **TIME-SALES PRICE (6 + 10)** | 11. | **72,036.85** |

| Annual Interest Rate |
|---|

**Annual Interest Rate ("AIR"): 5.490**

Interest rate is fixed at the AIR until maturity.

| TERMS OF PAYMENT |
|---|

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and | Type (Each Payment) | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annual | $9,407.37 | Principal & interest | 05/01/2020 | 05/01/2024 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE TO BUYER: | **1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT.** |
|---|---|

**NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.**

### SECURITY INTEREST

Buyer hereby grants to Seller, together with its successors and assigns and (Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

## RETAIL INSTALLMENT CONTRACT

Acknowledgment by Buyer(s): Buyer(s) hereby acknowledge personal delivery of a copy of this Contract signed by the Seller.

Buyer(s):

_Le Roy Dardenne_          Date _4-15-2019_

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_     TITLE: _Owner_     DATE: _4-15-19_

### SELLER ASSIGNMENT

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

Seller: Tractor Finders LLC

BY: _Wayne Caldwell_     TITLE: _Owner_     DATE: _4-15-19_

ADDITIONAL TERMS AND CONDITIONS

Buyer hereby agrees as follows:

**1. BUYER'S REPRESENTATIONS AND WARRANTIES & COVENANTS.** Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; (l) Buyer agrees Seller or Finance Company may provide to any guarantor the current outstanding balance and payment status on this Contract; and (m) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

**2. BUYER'S WAIVERS.** To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

**3. ASSIGNMENTS.** Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims.

Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

Buyer further acknowledges each of the following: (a) Finance

Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

**4. APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

**5. DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

**6. INSURANCE.** Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any

**ADDITIONAL TERMS AND CONDITIONS**

insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

**7. GENERAL INDEMNITY.** Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property. Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

**8. LATE PAYMENT FEE.** If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence. If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

**9. EVENTS OF DEFAULT.** An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder. No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

**10. REMEDIES.** Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it.

If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate. The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to any other remedy available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller. If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended

sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

**11. PERFORMANCE BY FINANCE COMPANY.** If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation. The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company. Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company. This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

**12. USURY.** Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate. If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

**13. BENEFIT.** Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

**14. SEVERABILITY.** Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

**15. ORIGINAL / TRANSMITTAL.** This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

**16. CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known to Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the

Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

17.  **USA PATRIOT ACT**.  Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer.  Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

18.  **MISCELLANEOUS**.   This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein.  No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company.  **BUYER WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT TRIAL SHALL BE BY AND ONLY TO THE COURT**.  Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. This Contract shall be governed by, and construed in accordance with, the laws of the State of Nebraska, except to the extent that the law of any other jurisdiction applies as to the perfection or enforcement of security interests in or liens on any Equipment.  For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 40000186148537
File Date : 04/15/2019

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**  14060 - FARM CREDIT

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

69402909

ARAR

File with: Secretary of State, AR

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Dardenne | Le | Roy | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 100 S 2nd St | Wabbaseka | AR | 72175 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO BOX 2409 | Omaha | NE | 68103 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
John Deere 8200 Tractor RW8200P002372

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
69402909             267                                           3187708404435

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)   **"EXHIBIT H"**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 18a. ORGANIZATION'S NAME | |
| OR 18b. INDIVIDUAL'S SURNAME | Dardenne |
| FIRST PERSONAL NAME | Le |
| ADDITIONAL NAME(S)/INITIAL(S) | Roy |
| SUFFIX | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

22. ☒ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | Tractor Finders LLC | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS 106892 Hwy 65 N | CITY Dumas | STATE AR / POSTAL CODE 71639 | COUNTRY USA |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 69402909-AR-0   14060 - FARM CREDIT SERVICES   FARM CREDIT SERVICES OF   File with: Secretary of State, AR   267   3187708404435

Customer No.: 4435.   Contract No.: 6377

N/c #

# AgDirect.

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

### BUYER ("Buyer")

Le Roy Dardenne
100 S 2nd St
Wabbaseka, AR 72175

Principal Residence: Arkansas
Organization ID: Not Applicable
Organization Type: Individual

### SELLER ("Seller")

Tractor Finders LLC
106892 Hwy 65 N
Dumas, AR 71639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

### EQUIPMENT DESCRIPTION ("Equipment")

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Case IH | 2588 | Combine | HAJ303369 |
| Case IH | 2052 | Grain Platform Head | CCC0014697 |

### EQUIPMENT LOCATION ("Equipment Location")

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

### STATEMENT OF COST

| | | |
|---|---|---|
| 1. | Cash Sale Price | 1. | 140,000.00 |
| 2. | Sales Tax, if any | 2. | 0.00 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | 3. | 140,000.00 |
| 4. | Cash Down Payment | 4. | 28,000.00 |
| 5. | Net Trade In Allowance | 5. | 0.00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | 6. | 28,000.00 |
| 7. | Unpaid Cash Balance (3 − 6) | 7. | 112,000.00 |
| 8. | AMOUNT FINANCED (BASIC TIME PRICE) (7) | 8. | 112,000.00 |
| 9. | FINANCE CHARGE (TIME-PRICE DIFFERENTIAL) | 9. | 15,990.30 |
| 10. | TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (8 + 9) | 10. | 127,990.30 |
| 11. | TIME-SALES PRICE (6 + 10) | 11. | 155,990.30 |

### Annual Interest Rate

**Annual Interest Rate ("AIR"): 4.550**

Interest rate is fixed at the AIR until maturity.

### TERMS OF PAYMENT

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS (Item 10)** in consecutive equal installments as follows:

| No. | Each Due | Amount and | Type (Each Payment) | Begin Date | End Date |
|-----|----------|-----------|---------------------|------------|----------|
| 5 | Annual | $25,598.06 | Principal & Interest | 07/01/2018 | 07/01/2022 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE TO BUYER: | 1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) |

App #1395;   Form Version: 11-2013
Form 8422, Retail Installment Contract

100AD

Legal Doc. Date: June 30, 2017
Page 1

**"EXHIBIT I"**

57,064.56

FORM 2264 (12017)

## INCOMING WIRE TRANSFER INSTRUCTIONS

| | |
|---|---|
| Bank Name: | AgriBank FCB (short name AGRIBANK ST PAUL) |
| Bank Address: | 30 E. Seventh Street, Suite 1600, St. Paul, MN  55101 |
| Bank Routing Number: | 096016972 |
| Final Bank Name: | Farm Credit Services of America |
| Final Bank Account Number: | ████1040 |
| Beneficiary Account Name: | Le Roy Dardenne |
| Beneficiary Account Number: | ███4435 |
| Beneficiary Address: | 100 S 2nd St. Wabbaseka, AR 72175 |
| Other Information: | 404435- 3086454 and 3096377 |

Send wire transfer funds prior to 3:00 p.m. (central time).

**NOTE**:  These instructions are ONLY for wire transfers.  If an ACH payment is decided to be sent for our customer instead of a wire, these instructions ARE NOT applicable.  A different routing number is used for our customer ACH payments.  Contact one of the Finance team members if you need help with ACH instructions.

**NOTE**:  Incoming International Wires:
The above wire instructions are the same for international wire payments coming to our customers.  Our receiving bank, Agribank, does not have a SWIFT Code.  International banks will need to use a U.S. bank (who they have U.S. dollar relations with) to process wires for the U.S.  Their U.S. bank will process the wire transfer using the incoming wire instructions as indicated above.

**Contact**:  Finance team at: 402-348-3234 with questions.

**"EXHIBIT J"**

# GENERAL LEDGER

*71788*

**ACCOUNT TITLE**

ABC Printing Company 1-800-442-0245

DESCRIPTION: *Wire transfer*
*LeRoy Dardenne*

OFFSET:

DATE *1/31/18*

PREPARED BY *Shannon*

APPROVED BY

**ACCOUNT NUMBER** *0140*     **TRAN CODE** *20*     **AMOUNT** $ *172 235.40*

⑆5513⑈0201⑈





STONE BANK

## WIRE/FUNDS TRANSFER PAYMENT ORDER

The undersigned originator requests payment to be made to the beneficiary or account number named below. To the extent not prohibited by law, the undersigned agrees that this wire transfer is irrevocable and that the sole obligation of the institution named above is to exercise ordinary care in processing this wire transfer and that it is not responsible for any losses or delays which occur as a result of any other party's involvement in processing this transfer.

**ORIGINATING BANK PROCESSING DATA**

Security Code: _____

Code Word: _____

Code Word Sequence Number: _____

Originating Bank's Account Number: _____

Dollar Amount $ *172,235.40*

(Note: Transfers in amount of $3,000 or more require addresses)

Transfer Number: _____

Date: *1,31,18* Time: *2:30* Fee: *0*

Prepared By: *Kannon / VH*

**BENEFICIARY BANK DATA**

ABA Routing Number: ▮▮▮▮▮ *6972*

Name of Institution: *AgriBank FCB*

Branch Information: ▮▮▮ *6972*

Address (if over $3000): *30 E. Seventh St Suite 1600*
*St Paul MN 55101*

**ORIGINATOR DATA**

Sender's Name: *Leroy Dardenne*

Address: *100 S. Second P.O. Box 200*
*Wabbaseka AR 72175*
*72175*

**BENEFICIARY DATA**

Beneficiary's Account #: ▮▮▮▮ *1040*

Beneficiary's NAME: *Farm Credit Serv. of America*

Address: _____

Other Instructions: *Loan #* ▮▮▮▮ *—*
*6454 = 57,064.56*
*6377 = 115,170.84*

Phone Number: ▮▮▮▮▮ *7549*

Driver's License #: ▮▮▮▮▮ *0261*

Account Number: *Loan Proceeds*

Dollar Amount: $ *172,235.40*

Sender's Signature: *Per Venice Stone*

**FOR INTERNAL VERIFICATION PURPOSES ONLY:**

Customer Name (Name of person being called back/verifying wire request): _____

Phone # on file/# called: _____ Ref OHB Loan #: _____ (if applicable)

Name of Banker Conducting Call Back Verification: _____ Time: _____ Date: _____

Form WIRE-TR-LAZ revised: 12/17/14